**688**

OFFICE AND PROFESSIONAL EM-
PLOYEES INTERNATIONAL UNION,
LOCAL NO. 9, AFL–CIO, a voluntary
labor organization, Plaintiff,

v.

ALLIED INDUSTRIAL WORKERS IN-
TERNATIONAL UNION, a voluntary
labor organization, Defendant.

Civ. A. No. 72–C–455.

United States District Court,
E. D. Wisconsin.

Aug. 13, 1975.

———◆———

George F. Graf and Herbert S. Bratt,
Milwaukee, Wis., for plaintiff.

E. H. Snyder, Milwaukee, Wis., for
defendant.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is an action by a union, pursuant to § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), to compel arbitration under a collective bargaining agreement of a controversy involving the discharge of an employee. The issue presented is whether the defendant employer's claim that the controversy was settled justifies a refusal to submit that claim to arbitration.[1] For the reasons hereinafter indicated, the claim of settlement is not a sufficient reason for refusing to proceed to arbitration, and plaintiff's motion for summary judgment to compel arbitration must be granted.

### I.

The uncontested allegations of the complaint are that plaintiff is a voluntary labor organization which represents various office employees of the defendant, and that at all times material to this action the plaintiff and defendant were parties to a collective bargaining agreement containing various provisions regulating the dismissal of employees and providing for the resolution of any controversies arising under the agreement. The relevant provisions of the collective bargaining agreement read as follows:

#### "ARTICLE IX

"*SECTION 1.* No employe, having seniority, shall be dismissed without just cause, and without at least two (2) weeks' notice in advance, or, in the alternative two (2) weeks' pay in lieu of such notice, except for dishonesty.

"Should any employe feel that he or she has been dismissed without just cause, such employe may appeal to the Union, and the Union shall investigate

the circumstances of such dismissal, and, if it deems it proper, *it shall have the right to take the matter into conference with the employer to seek an adjustment, and, if no satisfactory adjustment can be reached, the matter may be taken to arbitration in accordance with the arbitration procedure set out in ARTICLE X.*

#### "ARTICLE X

##### "Arbitration

"*SECTION 1. Any controversy* arising over the interpretation of or adherence to the terms and provisions of this agreement *shall be settled by negotiation between the Employer and the Union's representative.*

"*SECTION 2.* When a controversy cannot be settled through negotiations, *it shall be referred to a Board of Arbitration* composed of one (1) representative of the Union, one (1) representative of the Employer and a third (3rd) neutral member selected by a vote of the first two.

"*SECTION 3.* The majority decision of this Board shall be final and binding on both the Union and the Employer in any controversy so settled." (Emphasis added.)

The contested portion of the complaint alleges that a controversy involving the discharge of Mildred Perry, an employee of defendant, was submitted into the grievance procedure as provided in the collective bargaining agreement; that on March 22, 1972, plaintiff, through its duly authorized business representative, Edward Kubicki, submitted the controversy to arbitration pursuant to Article X of the collective bargaining agreement; and that on May 16, 1972, defendant refused to take the controversy to arbitration. The demand for judgment sought (1) an order requiring defendant to agree on an arbitration board

---

1. Although both plaintiff and defendant are labor unions, defendant's status in this action is that of the employer of the secretarial and office workers whom plaintiff repre- sents. This is, therefore, a familiar union versus employer action to compel arbitration.

and to submit the Mildred Perry controversy to the board for resolution, (2) an order that defendant was to implement and abide by any award the arbitration board would render, (3) such other relief as is just and equitable, and (4) plaintiff's costs and disbursements.

Defendant's responsive pleading contained both an answer and a counterclaim. In the answer, defendant denied the allegations that the controversy had been submitted to the grievance procedure, that plaintiff had requested arbitration, and that defendant had refused to arbitrate.

In its counterclaim defendant realleged those parts of the complaint dealing with the existence and terms of the collective bargaining agreement; asserted that prior to January 24, 1972, there had been several conferences with Mildred Perry concerning her unsatisfactory work performance; and alleged that on January 24, 1972, defendant informed Mildred Perry that her employment with the defendant was terminated for just cause, effective in two weeks.

The counterclaim further asserted that at the request of Mildred Perry and plaintiff, defendant had conferred on several occasions with Mildred Perry in order to negotiate a settlement of the controversy, and that a settlement was agreed to on the following terms:

"(a) The employment of said MILDRED PERRY by the defendant was extended to February 25, 1972 at which time said MILDRED PERRY was to be classified as a voluntary termination by her;

"(b) The defendant was to pay said MILDRED PERRY 2 weeks vacation pay which amount was substantially in excess of the total vacation pay legally due said MILDRED PERRY.

"(c) The defendant was not to contest the eligibility of said MILDRED PERRY for unemployment compensation benefits; and

"(d) The defendant was to give said MILDRED PERRY a letter of reference upon her request."

The counterclaim further asserted that all of the above terms had been performed save that Mildred Perry had not requested the letter of reference as yet.

It was further alleged that the collective bargaining agreement and the agreement settling the controversy involving the discharge of Mildred Perry constituted a contract within § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and that plaintiff's demand for arbitration on March 22, 1972, and the commencement of this action seeking to compel arbitration were in violation of the terms of such contract. The demand for judgment sought (1) dismissal of the complaint, (2) specific performance of the agreement settling the controversy, (3) an injunction restraining plaintiff from commencing any legal action relating to the controversy which was the subject matter of the settlement agreement, and (4) defendant's costs, disbursements, and attorney's fees.

Plaintiff then filed a reply to the counterclaim in which it denied, *inter alia,* the allegation that the controversy had been settled, included an affirmative defense that the injunctive remedy requested in the counterclaim was repugnant to national labor policy and beyond the court's jurisdiction, and demanded dismissal of the counterclaim.

Plaintiff subsequently moved for summary judgment on its complaint pursuant to Rule 56(a) of the Federal Rules of Civil Procedure. The motion for summary judgment was accompanied by the affidavit of Edward Kubicki in which he stated that he is the plaintiff's business agent, that on March 22, 1972, he sent a request to Gilbert Jewell, the president of the defendant, invoking the arbitration section of the collective bargaining agreement between plaintiff and defendant, and that under date of May 16, 1972, defendant answered the request by a letter refusing to submit the matter to arbitration. Copies of the letters are attached to the Kubicki affidavit.

## II.

At the outset, a discussion of some "procedural" issues is required. The only parts of the complaint which have been denied by defendant are the allegations that the controversy over the discharge of Mildred Pérry was submitted to the grievance procedure under the collective bargaining agreement, and that arbitration had been requested by plaintiff but refused by defendant. The Kubicki affidavit, together with the attached letters, satisfied plaintiff's burden on the motion for summary judgment to show that these allegations are true. Further, at oral argument, defendant agreed that there was no issue of fact on the allegations that arbitration had been requested and refused.

Defendant's argument in opposition to the summary judgment motion has been, rather, that because plaintiff has not buttressed its formal denial of a settlement agreement by affidavits or otherwise, the counterclaim presents factual issues sufficient to prevent entry of summary judgment on the complaint.

■ As a matter of legal theory, a counterclaim is irrelevant to granting summary judgment on the complaint since it is not directed at the allegations of the complaint but rather is an independent claim for relief. Rules 8(a), (d), and 13, Federal Rules of Civil Procedure. The federal courts are not, however, slaves to archaic rules of common law pleading. The fact that the defendant's allegations—that the controversy was settled—are denominated a counterclaim rather than an affirmative defense is not fatal to their relevancy. Rule 8(c), Federal Rules of Civil Procedure, provides in part:

> " * * * When a party has mistakenly designated a defense as a counterclaim * * * the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation."

It is in the interests of justice that the allegations of defendant which are denominated as a counterclaim be instead treated as an affirmative defense.

■ So viewed, the issue is whether the claim that the controversy has been settled is a sufficient reason for refusing arbitration under the collective bargaining agreement. The fact that plaintiff has not attempted to demonstrate by affidavit or otherwise that the claim of settlement is untrue or otherwise defective is not necessarily fatal to the motion for summary judgment. If the claim of settlement is an insufficient defense, or even if proved it is not a material fact, then summary judgment may be granted. Rules 12(f) and 56(c), F. R.Civ.P.

## III.

The role of a court in an action to compel arbitration under a collective bargaining agreement was defined in the famous *Steelworkers* trilogy: *United ed Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S. Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S. Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S. Ct. 1358, 4 L.Ed.2d 1424 (1960). The Court stated as follows in *United Steelworkers of America v. American Manufacturing Co., supra*, 363 U.S. at 567–568, 80 S.Ct. at 1346:

> " * * * The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for.

"The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious. The processing of even frivolous claims may have therapeutic values of which those who are not a part of the plant environment may be quite unaware."

The substantive merits of the controversy involving Mildred Perry's termination is a matter within the grievance and arbitration provisions of the collective bargaining agreement. Defendant has not denied this, but instead has asserted that because the controversy was settled, it has no duty to arbitrate. There are two arguments in support of defendant's position.

■ First, it might be said that the settlement agreement implicitly waived plaintiff's right to proceed to arbitration. In *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), however, the Court enunciated the rule that questions of whether the procedural prerequisites which condition a duty to arbitrate have been met should be for the arbiter to determine. Under this rule the issue of whether arbitration has been waived is one for the arbiter to decide. *Transit Union v. Greyhound Lines, Inc.*, 323 F. Supp. 219 (D.Mass.1971). See also, *Koven & Brother, Inc. v. Steelworkers*, 381 F.2d 196 (3d Cir. 1967); *General Warehousemen and Employees v. Ameri-*

*can Hardware Supply Co.*, 329 F.2d 789 (3d Cir.), cert. denied, 379 U.S. 829, 85 S.Ct. 57, 13 L.Ed.2d 37 (1964); *Automobile, Aircraft, and Agricultural Implement Workers v. Daniel Radiator Corp.*, 328 F.2d 614 (5th Cir. 1964). Such a result is especially appropriate here, since plaintiff has denied the existence of any settlement agreement, and defendant has not asserted that the agreement included any explicit waiver of arbitration.

■ The second argument in defendant's favor is that the alleged settlement agreement was incorporated into the collective bargaining agreement and was a *pro tanto* modification of plaintiff's right to insist on arbitration of the controversy. But since plaintiff has denied that a settlement agreement was reached, this would constitute a dispute over the interpretation of the collective bargaining agreement which itself is subject to arbitration under Article X, supra. See, *Operating Engineers v. Dow Chemical Co.*, 348 F.Supp. 1149 (S.D.Tex.1972).

■ In summary, plaintiff is entitled to have the arbitration board determine not only the substantive merits of the controversy over Mildred Perry's termination, but also whether there was a waiver of arbitration or a breach of any settlement agreement.[2]

It is ordered that plaintiff's motion for summary judgment is granted.

It is further ordered that the controversy over Mildred Perry's termination shall be referred to an arbitration board established under the provisions of the collective bargaining agreement.

---

2. The decision relied on by defendant, *Amalgamated Meat Cutters and Butcher Workmen of North America v. M. Feder & Co.*, 234 F.Supp. 564 (E.D.Pa.1964), is inapplicable here, since in that case the parties had gone to arbitration before reaching a settlement agreement and no one disputed its existence.