**NEWSPAPER GUILD OF GREATER
PHILADELPHIA LOCAL 10**

v.

**CENTRAL STATES PUBLISHING CO.**

Civ. A. No. 77–202.

United States District Court,
E. D. Pennsylvania.

March 30, 1978.

Richard B. Sigmond, Meranze, Katz, Spear & Wilderman, Philadelphia, Pa., for plaintiff.

Zachary D. Fasman, Seyfarth, Shaw, Fairweather & Geraldson, Washington, D.C., for defendant.

## MEMORANDUM

NEWCOMER, District Judge.

The plaintiff union brought this suit pursuant to Section 301 of the Labor-Management Relations Act, 29 U.S. § 185, seeking

an order to compel the defendant employer to arbitrate a grievance concerning the employment status of Edward J. Gebhardt. Both sides have moved for judgment on the pleadings or, in the alternative, summary judgment. As the Court finds that the defendant is obligated to arbitrate this grievance, the plaintiff's motion for summary judgment will be granted and the defendant's motion will be denied.

As recounted in the parties' stipulation of facts, the facts underlying this case are relatively simple. The two central characters, the plaintiff union and the defendant employer, negotiated a collective bargaining agreement in 1973, which was effective by its terms from September 1, 1973, to August 31, 1975. Under the agreement, if a party desired, it could give written notice to the other within certain time limits of its desire to terminate or alter the agreement for the period following August 31, 1975. Pursuant to this provision, the union gave timely notice of its desire to alter or terminate the agreement, and the parties commenced bargaining for a new agreement; an agreement was not reached prior to August 31, 1975, the stated date of expiration of the 1973–1975 collective bargaining agreement. Nonetheless, the parties continued negotiations and agreed that during negotiations they would continue to abide by the terms of the old contract on a day-to-day basis. Negotiations continued until midnight, November 23, 1975, and on November 24, 1975, the union struck. The strike lasted until April 30, 1976, when the parties agreed that the union would return to work. Finally, on September 21, 1976, a new collective bargaining agreement was executed which was retroactive to the expiration date of the prior agreement.

During the course of the above-described events, on October 25, 1975, the defendant employer discharged Edward J. Gebhardt from his position as City Editor of the *Delaware County Daily Times*. Mr. Gebhardt, formally the sports editor at the *Daily Times*, requested, upon his discharge, that his employer return him to his former position. When Gebhardt's request was refused, he made a written demand on the employer constituting a grievance; the grievance was subsequently denied and the employer refused to proceed to arbitration.

Although the union claims that the employer has a duty to arbitrate Gebhardt's grievance, the employer refuses to arbitrate the grievance and denies that it has an obligation to do so. In support of its position, the employer defends by contending that it did not agree to arbitrate the grievance, that even if it did the union waived its right to arbitration, and several procedural barriers exist which preclude arbitration. As the federal courts are empowered under Section 301 of the Labor Management Relations Act to enforce agreements to arbitrate, the duty falls upon this Court to determine the sufficiency of the employer's defenses to this action and to decide whether an order is to issue compelling the defendant to commence arbitration. *Textile Workers Union of America v. Lincoln Mills of Alabama*, 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed.2d 972 (1957).

The first defense raised by the employer is a fundamental one in a Section 301 suit. In an action brought to compel arbitration, the court's primary role is to determine whether the parties have agreed to arbitrate the grievance in question; generally once that determination is made, the court must step out of the labor process. *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). In this case, the employer claims that at the time that Gebhardt's grievance arose, the parties had no agreement to arbitrate; on October 25, 1975, the date of Mr. Gebhardt's discharge, the 1973–75 collective bargaining agreement by its terms had expired and the 1975–78 agreement had not yet been executed. Although the facts recited are true, the Court cannot agree that an agreement to arbitrate did not exist at the time of Gebhardt's discharge, as the Court finds that the parties, in fact, entered into two agreements to arbitrate grievances arising at that time.

The first agreement to arbitrate that existed at the time of Gebhardt's discharge arose upon the termination of the 1973–75 agreement. By stipulation, the parties have informed the Court that when the 1973–75 agreement expired by its terms on August 31, 1975, the parties agreed to continue negotiations and during negotiations to "abide by the terms of the old contract on a day-to-day basis." As negotiations continued until a month after Gebhardt's discharge, the terms of the 1973-75 contract were in effect at the time Gebhardt was fired. One of those terms provided for the funnelling of "any dispute as to the interpretation of any clause of [the] agreement or as to the carrying out of its terms" through the grievance-arbitration process. It appears clear to the Court then that this arbitration provision which was included in the 1973–75 agreement was in effect at the time Gebhardt's grievance arose; however, the defendant argues that the parties did not intend to include the arbitration provision within the extension of the "terms" of the agreement and, therefore, the Court cannot find that the arbitration agreement survived beyond the stated expiration date of the contract. The Court finds the defendant's position meritless. There is no question that at the expiration of the 1973–75 contract the parties agreed to abide by the "terms" of the old contract; the only question defendant raises is whether the parties intended that the word "terms" should be defined so as to include the arbitration provision. As the defendant has not argued that the parties ever clearly indicated that the "terms" of the contract did not include the arbitration provision, the Court must presume that the arbitration provision was an extended "term." *Newspaper Guild v. Washington Post*, 96 LRRM 3138 (D.D.C. 11/15/77); *see also Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977).

However, even if there is a question of fact remaining as to whether the 1973–75 contract's arbitration provision covers Gebhardt's grievance, summary judgment is not precluded, as the Court finds that by the 1975–78 agreement the parties also agreed to arbitrate grievances arising at the time of Gebhardt's discharge. This second agreement which was executed on September 21, 1976, was made retroactive to the expiration of the prior agreement; the retroactivity provision means that the terms of this agreement apply to events dating back as far as September 1, 1975. And as this contract contains an arbitration clause which mirrors the one in the 1973–75 agreement, there surely is an arbitration agreement existing which covers grievances arising at the time of Gebhardt's discharge. Although certain provisions in collective bargaining agreements, such as in collective union security check-off provisions, will not be applied retroactively because they adversely affect third persons, *see, e. g., N.L. R.B. v. Mechanical & Allied Production Workers Union*, 427 F.2d 883 (1st Cir. 1970), the arbitration provision is one which does not have such an effect and may be applied retroactively. *See International Brotherhood of Electrical Workers, Local Union No. 1102 v. Wadsworth Electric Manuf. Co.*, 240 F.Supp. 292 (E.D.Kent. 1965). In *Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union*, 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977), the Supreme Court found that parties to collective bargaining agreements must be deemed conscious of the federal policy in favor of arbitration and, therefore, unless they clearly exclude certain disputes from arbitration, the courts are afforded a basis for concluding that all disputes are covered by their general arbitration clauses. In *Nolde*, the Court held that a severance pay grievance which arose after the contract's termination was arbitrable under the arbitration provision of the expired collective bargaining agreement as the right to severance pay arose under the old contract and the parties failed to exclude from their arbitration provision contract disputes arising after termination of the contract. Although other contract obligations such as the no strike duties imposed on the union might have terminated with the collective

agreement's expiration, the Supreme Court found arbitration appropriate because the parties had not clearly indicated that arbitration was to terminate with the agreement.[1] As the parties in this case did not indicate otherwise in their agreement, this Court finds that the reasoning and policies articulated in the *Nolde* decision demand that the arbitration provision be applied retroactively to Gebhardt's grievance.

■ Having found that the parties entered at least one agreement to arbitrate grievances arising at the time of Gebhardt's discharge, the next question is whether the agreement covers Gebhardt's grievance. The defendant employer contends that it does not because Gebhardt, as City Editor, was not an employee covered by the collective bargaining agreement. Whether Gebhardt was covered by the collective bargaining agreement is a "dispute as to the interpretation of [the] agreement or as to the carrying out of its terms," and therefore under the collective agreement a question for the arbitrator. Therefore, as there is not "forceful evidence of a purpose to exclude the claim from arbitration", the Court must conclude that it is covered by the agreement's arbitration provisions. *United Steelworkers v. Warrior & Gulf Navigation Company*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960).

■ Once it is determined that the party seeking arbitration has shown that there is an agreement to arbitrate the grievance in question, the court's job in a Section 301 suit is generally completed. And yet, the defendant employer has raised several other objections to arbitration; however, all of these objections are " 'procedural' questions which grow out of the dispute and bear on its final disposition" and therefore, should be decided by the arbitrator. *John Wiley & Sons v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). The defendant claims that the grievance was not timely

filed; clearly, this is a procedural matter that is not for the Court to consider and which will not bar the arbitration order. *General Warehousemen & Employees Union No. 636 v. American Hardware Supply Co.*, 329 F.2d 789 (3rd Cir. 1964). So too is the question of whether the union's right to seek arbitration has been waived by Gebhardt proceeding in state court for severance pay. The employer claims that Gebhardt waived the union's right to request arbitration by filing his state court action for severance pay. While it is true that a party may be estopped from invoking a remedy if it has already employed another inconsistent remedy, it would appear to the Court that Gebhardt could not be found guilty of such action. In state court he is seeking severance pay; in the arbitration proceeding, the union is asking that Gebhardt be reinstated in his former position. Although these remedies do not appear inconsistent to the Court, it is really a question which the Court does not have to decide, because, like the question of timely filing, it is a procedural matter that must be left to the decision of the arbitrator. In *International Union of Operating Engineers v. Flair Builders*, 406 U.S. 487, 92 S.Ct. 1710, 32 L.Ed.2d 248 (1972), the reluctant party to arbitration claimed that the equitable defense of laches prevented the Court from ordering arbitration in that case. Although laches was an equitable defense— one arising outside of the specific terms of the collective bargaining agreement—the Court held that it was subject to arbitration. Similarly, in this case, the waiver defense is a procedural defense, though equitable in nature, which is to be raised at arbitration. It cannot prevent arbitration, for if the Court was to resolve the waiver issue it would be necessary to address the merits of the case which is beyond the Court's role in a Section 301 suit. *Controlled Sanitation Corporation v. District 128 of the International Association of Ma-*

---

1. Given that the parties explicitly agreed to arbitrate Gebhardt's grievance by virtue of their extension of the 1973–75 collective agreement and their agreement to retroactively apply the arbitration provision in the 1975–78 agreement, it is not necessary to reach the question under *Nolde* of whether the 1973–75 agreement itself provided for arbitration of Gebhardt's grievance even though it arose beyond the time when the agreement itself had expired.

*chinists & Aerospace Workers*, 524 F.2d 1324 (3rd Cir. 1975). *See also Amalgamated Meat Cutters & Butcher Workmen of North America, AFL–CIO, Local No. 295 v. Servomation Corporation*, 402 F.Supp. 1058 (M.D.Pa.1975); *Office & Professional Employees International Union v. Allied Industrial Workers International Union*, 397 F.Supp. 688 (E.D.Wis.1975); *Transit Union v. Greyhound Lines*, 77 LRRM 2238 (D.Mass.1971). The final defense that the defendant raises to arbitration is that he claims that by accepting severance pay the grievant has waived his right to arbitration. This is similar to the last discussed defense and demands the same response. Such a defense may be properly presented in an arbitration, but it is not a defense in an action to compel arbitration under the Labor Management Relations Act. *General Warehousemen & Employees Union No. 636 v. American Hardware Supply Co.*, 329 F.2d 636 (3rd Cir. 1964).

To conclude, the Court has found that there was an agreement to arbitrate Gebhardt's grievance and none of the objections raised by the defendant are sufficient defenses in a Section 301 suit. Therefore, the Court grants plaintiff's motion for summary judgment and orders arbitration of Gebhardt's grievance. It should be noted that the plaintiff also requests attorney's fees for its prosecution of its claim; however, as the Court finds that the defendant, in good faith, could have believed it did not have an obligation to arbitrate this grievance, the plaintiff's request will be denied. *International Union of District 50, United Mine Workers of America v. Bowman Transportation, Inc.*, 421 F.2d 934 (5th Cir. 1970).