INTERNATIONAL LADIES' GARMENT WORKERS' UNION, AFL–CIO, Plaintiff-Appellee,

v.

ASHLAND INDUSTRIES, INC., et al., Etc., Defendants,

Norman J. Alfin, Defendant-Appellant.

No. 73–2017

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Jan. 21, 1974.

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

Saram Amerling, New York City, Louis H. Bayer, Birmingham, Ala., for defendant-appellant.

George C. Longshore, Birmingham, Ala., Max Zimny, New York City, for plaintiff-appellee.

Before BROWN, Chief Judge, and DYER and SIMPSON, Circuit Judges.

BROWN, Chief Judge:

The question presented is whether the District Court erred in setting aside the award of the arbitrator upon the ground that the arbitrator exceeded his authority contained in the collective bargaining agreement in his holding that the underlying collective bargaining agreement was induced by fraud. While we conclude that the arbitrator invaded the province of the Court and thus no error was committed in setting aside its opinion and award, we have to recognize that this unfortunate result was brought about by the initial failure of the District Court to perceive its responsibility for determining the validity of the underlying contract and thus the arbitrability of the issues ultimately decided by the arbitrator. But as usual, the fault must lie at the feet of counsel who should have anticipated the problem. We affirm the setting aside of the arbi-

trator's award but reverse and remand for further proceedings.

The facts may be stated briefly. The Union[1] executed a collective bargaining agreement on May 1, 1969 with Employer.[2] The contract was signed by Norman J. Alfin, as president of the Employer and also individually. Employer encountered financial problems and ceased operations in October of 1969. The Union filed a § 301 suit against Employer and against president Alfin seeking to recover[3] certain sums owing under the agreement.

A default judgment was taken against the Employer on April 6, 1971. In his answer to the § 301 complaint, president Alfin individually set up as a defense Article XXIX of the collective bargaining agreement which stated that the grievance and arbitration procedure shall be the exclusive means for resolution of disputes arising out of a breach of the collective bargaining agreement. The Union then filed a motion for summary judgment or in the alternative for an order compelling arbitration. On April 11, 1972 the District Court stayed the case pending arbitration. It warrants emphasis that in no way up to this point did Alfin challenge the validity of the underlying collective bargaining agreement.

In the arbitration proceeding, president Alfin advanced the contention that he had been unlawfully induced to make the contract by an agent for the Union. The alleged inducement was said to have consisted of a promise by a Union official that the Employer would become a "registered shop" for, and receive business from, the Villager (a large dress manufacturer) if Alfin signed the contract. President Alfin contended that, having signed the contract individually in reliance on these representations, Employer was never registered as promised and accordingly the Villager began curtailing its work sent to Employer culminating in a final cessation which was ultimately responsible for Ashland going out of business. The written collective bargaining agreement itself contained no references to any such promises by the Union.

The arbitrator found fraud in the inducement of president Alfin's personal liability under the collective bargaining agreement and concluded that the contract was not enforceable against him. Thus the merits of the grievance (see note 3, *supra*) as such were not reached by the arbitrator. Thereafter, the Union filed a motion in the District Court to set aside the award on the grounds that the arbitrator had exceeded his authority. The Court granted the motion on February 26, 1973.

In concluding that the trial court did not err in setting aside the award of the arbitrator we are not unmindful of, nor do we succumb to "the temptation of passing on the intrinsic merits of the controversy under the guise of determining whether the dispute is within the promise to arbitrate." Taft Broadcasting Co. v. Radio Broadcast Technicians Local Union No. 253, 5 Cir., 1962, 298 F.2d 707, 709. The trilogy opinions[4] forewarned courts against making such an invasion of the arbitrational tribunal. In the same air of detached supervision, when parties have agreed to submit questions of contract interpretation to an arbitrator, courts are limited in their roles to ascertaining whether the claims to be arbitrated are governed by the contract. United Steel-

1. International Ladies' Garment Workers' Union, AFL–CIO.

2. Ashland Industries, Inc.

3. This is the subject matter of the "grievance" submitted to, but never decided by, the arbitrator.

4. United Steelworkers of America v. American Manufacturing Co., 1960, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; United Steelworkers of America v. Warrior & Gulf Navigation Co., 1960, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; United Steelworkers of America v. Enterprise Wheel & Car Corp., 1960, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424.

workers of America v. American Manufacturing Co., *supra*, 363 U.S. at 567–568, 80 S.Ct. 1343.

▆ Notwithstanding these compelling policy considerations, arbitration is a matter of contract and it follows that the arbitrability of issues is a matter to be determined by the Court on the basis of the contract entered into by the parties. Atkinson v. Sinclair Refining Co., 1962, 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462; John Wiley & Sons v. Livingston, 1964, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898. Courts must review the merits of an arbitration to insure that the arbitrator has confined his decision to interpretation and application of the collective bargaining agreement. Safeway Stores v. American Bakery and Confectionery Workers, 5 Cir., 1968, 390 F.2d 79, 81–82. Thus basic to the orderly effectuation of a national policy designed to minimize industrial strife is the proposition that a party may be required to submit to arbitration only disputes which he has previously agreed to so submit. United Steelworkers of America v. Warrior and Gulf Navigation Co., *supra*, 363 U.S. at 574, 80 S.Ct. 1347.

Usually the problem turns on whether a particular dispute is within the arbitration agreement as the subject for arbitration. Other times it may go to the sort of remedy which the arbitrator can prescribe to effectuate a decision on a matter admittedly within the scope of arbitrability.

But that is not what happened here. Alfin first set up as a defense to the Union's § 301 suit the arbitration clause as an exclusive means for resolution of disputes. No one questioned then or now that the disputes (see note 3, *supra*) were within the grievance clause. The order of stay and reference to an arbitrator was eminently correct. But after being successful in attaining a stay in the District Court pending arbitration, he assumed the inconsistent position of attacking the validity of the very contract which included the arbitration clause which he successfully invoked.

▆ It is our view that Alfin's attack upon the validity of the underlying contract goes to the heart of whether there is *any*thing to arbitrate—not just *what* there is to arbitrate—and thus poses a legal question for the Court rather than the arbitrator. The arbitrator who derives his power solely from the contract cannot hold that charter to be legally ineffective. United Steelworkers of America v. Enterprise Wheel & Car Corp., *supra*, 363 U.S. at 597, 80 S.Ct. 1358; Safeway Stores v. American Bakery and Confectionery Workers, *supra*, 390 F.2d at 81; Local Union No. 787, International Union of Electrical Radio and Machine Workers v. Collins Radio Co., 5 Cir., 1963, 317 F.2d 214, 216. The parties have found no federal decision contrary to our conclusion. And the only one put forward by Alfin is In The Matter of the Arbitration between Weinrott v. Carp, 32 N.Y.2d 190, 344 N.Y.S.2d 848, 298 N.E.2d 42 (filed April 26, 1973), which we decline to follow.

▆▆ Thus, the time and place for determination of the validity of the underlying collective bargaining agreement was the § 301 suit first filed by the Union. Though Alfin failed at this time to raise in his pleadings his later contentions concerning the validity of the contract, arguably F.R.Civ.P. 54(c) entitles him to such a determination even if relief was not demanded in his pleadings. Because it is unclear from the record whether the District Court impliedly found the underlying contract to have been lawfully induced, we must remand to the lower Court for its consideration of this issue. If the District Court finds that the collective bargaining agreement (to which Alfin was a party) was valid, it may then proceed to order the particular grievances arbitrated. In the light of the history of this case any such order of supplemental reference to a new arbitrator should be sufficiently specific.

If, on the other hand, it finds in the negative, arbitration may not be ordered absent prior contractual agreement.[5]

We affirm the judgment of the District Court insofar as it set aside the award of the arbitrator but remand the case for action not inconsistent with this opinion.

Affirmed and remanded.

5. Although not crystal clear, the action of the District Court in conjunction with or following the order setting aside the award is sufficiently dispositive to give requisite finality to the orders permitting appeal, at least in the Cohen v. Beneficial Industrial Loan Corp., 1949, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528, sense.